Filed 3/18/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CITY OF LOS ANGELES, | B308909 |
| Petitioner, | (Super. Ct. No. 20STCV08168) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent, | |
| BARBARA WONG, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandate. Petition granted; alternative writ discharged. Daniel S. Murphy , Judge.

Office of the City Attorney, Michael N. Feuer, City Attorney, Kathleen A. Kenealy, Chief Deputy City Attorney, Scott Marcus, Blithe S. Bock and Shaun Dabby Jacobs, City Attorneys for Petitioner.

No appearance for Respondent.

McNicholas & McNicholas, Matthew S. McNicholas, Courtney C. McNicholas; Esner, Chang & Boyer, Stuart B. Esner for Real Party in Interest.

## INTRODUCTION

Plaintiff Barbara Wong alleges that her husband, Los Angeles Police Department (LAPD) officer Franklin Chen, contracted typhus from unsanitary conditions in and around the Central Community Police Station where he worked. Wong alleged that several months after Chen first became ill, she contracted typhus as a result of sharing a living space with Chen. Wong sued the City of Los Angeles, alleging negligence and a dangerous condition of public property under Government Code section 835.[1]

The City demurred to Wong's complaint, asserting that because Wong did not allege that she had contact with the property at issue, the City did not owe Wong a duty of care with respect to the condition of its property. The City also contended it was immune from liability under section 855.4, which bars claims relating to a "decision to perform or not to perform any act to promote the public health of the community by preventing disease or controlling the communication of disease within the community." (§ 855.4, subd. (a).) The trial court overruled the City's demurrer, and the City filed a petition for writ of mandate.

We issued an alternative writ, and now grant the City's petition. A public entity's liability must be based on statute, and section 835 does not extend liability to members of the public whose alleged injuries do not arise from use of the property at issue or any adjacent property. In addition, the immunity in section 855.4 bars liability for decisions affecting public health.

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  First amended complaint

Wong filed her first amended complaint on July 15, 2020 alleging two causes of action: "liability for dangerous condition of public property pursuant to Government Code § 835," and "negligence for personal injuries."  Wong alleged that her husband, Franklin Chen, was an LAPD officer assigned to the Central Community Police Station (Central Division).  Wong alleged that the "Central Division encompasses Bunker Hill/Historic Core, Central City East, Chinatown, Civic Center, City Hall, City Hall East, Downtown Los Angeles, Fashion District, Jewelry District, Little Tokyo, Old Bank District, Solano Canyon, South Park-Entertainment, and the Toy District (collectively, the 'Subject Premises')."  She asserted that "LAPD Central Division officers, including Chen, are required to engage and interact on a regular basis with the homeless population that live[s] in downtown Los Angeles," and "[t]he encampments of the homeless population within Central Division are unsanitary, unhygienic, unclean, rat-infested, and flea-infested."

Wong further alleged that "Cal-OSHA has also deemed the Central Division Police Station, located at 251 East 6th Street, Los Angeles, CA 90014, as unsanitary, unhygienic, unclean, rat-infested, flea-infested, and/or otherwise unfit to be occupied by humans, including City and LAPD employees.  Cal-OSHA issued citations to the City of Los Angeles Police Department Central Division and ordered the City to vacate and abate the unsanitary, unhygienic, unclean, rat-infested, and flea-infested conditions on the City's property at 251 East 6th Street, Los Angeles, CA 90014."  "Despite the direction of Cal-OSHA, the City failed to abate, maintain, upkeep, oversee, manage, repair, mend,

3

renovate, overhaul, clean, sanitize, disinfect, sterilize, decontaminate, wash, and otherwise preserve the properties and premises within Central Division, including, but not limited to, Central Division Police Station where Chen was assigned to work."

Wong alleged that "[t]he accumulation of the waste and lack of maintenance, upkeep, cleaning, and/or abatement of the unsanitary and unhygienic conditions allowed the City premises to become infested with rats and mice which carried fleas infected with the typhus virus. The typhus-infected fleas continued to spread to City properties and premises, including Central Division Police Station and its surrounding areas where Chen was assigned to work." Wong alleged that Chen became ill in spring 2019, and was diagnosed in June 2019 with typhus; she alleged he contracted typhus while working on City property in and around Central Division. Wong and Chen "resided in the same house where they shared meals, bathrooms, and common living areas and had ongoing physical contact with one another." In October 2019, Wong was also diagnosed with typhus, and alleged that she "is informed and believes, and thereon alleges, that she was infected with typhus as a result of the unsafe, unsanitary, and dangerous conditions that existed on City property."

Wong alleged that the City "knew of the unsanitary hazardous conditions at Central Division Police Station and in the areas it served and permitted the conditions to remain unabated and to increase in severity despite the threat to the health, safety and welfare of Plaintiff." The City had a duty to "maintain, upkeep, oversee, manage, repair, mend, renovate, overhaul, clean, sanitize, disinfect, sterilize, decontaminate, wash

4

and otherwise preserve the properties and premises within Central Division, including, but not limited to, Central Division Police Station," and it breached that duty.

In the cause of action for dangerous condition of public property, Wong alleged that the City "knew of the dangerous condition (i.e., the unsanitary, unhygienic, rat-infested, and flea-infested condition) of the Subject Premises," knew or should have known the dangerous condition would cause injury or death, but failed to abate the dangerous condition. She asserted that "[p]rior to Spring 2019, [the City] had actual and/or constructive notice that the Subject Premises was the subject of a typhus epidemic and that proactive conduct was required in order to ensure safety." Wong alleged that the City, "in violation of California Government Code § 815.2, failed to exercise reasonable care," and "allowed the dangerous condition to remain in violation of Government Code § 835, thus posing a hazard to persons such as [Wong] who would foreseeably come in contact with the typhus virus even when acting with due care." She also alleged that the City "failed to remedy the dangerous condition to discharge [its] mandatory duty as required by Government Code § 815.6." In her cause of action for negligence, Wong alleged that the City negligently failed to maintain the subject premises, causing injury to Wong.

Wong prayed for damages including general and special damages, medical expenses, and costs.

## B. Demurrer

The City demurred on the basis that it was immune from liability relating to the control of disease under section 855.4; Wong failed to allege facts sufficient to state a cause of action

5

because she did not allege a cognizable duty; and a public entity may not be liable under common law theories of negligence.

The City asserted that it was immune from liability because the "failure to keep public property germ and virus free does not make the City subject to liability for [a] dangerous condition of public property." The City relied on section 855.4, which provides that a public entity is not liable "for an injury resulting from the decision to perform or not to perform any act to promote the public health of the community by preventing disease or controlling the communication of disease . . . if the decision . . . was the result of the exercise of discretion vested in the public entity . . . , whether or not such discretion be abused." (§ 855.4, subd. (a).) The City also cited *Wright v. City of Los Angeles* (2001) 93 Cal.App.4th 683 (*Wright),* which we discuss more fully below. In short, *Wright* held that under section 855.4, a public entity could not be held liable for the presence of germs or viruses on publicly owned property. The City argued that the same reasoning barred Wong's claims.

The City also contended that Wong's cause of action for dangerous condition of public property failed because she alleged she contracted typhus from Chen in their home—not directly from the allegedly dangerous property. The City argued that it could not be liable for any injury occurring on private property.

The City further asserted that Wong failed to allege that the City had a mandatory duty relating to the property, as required under section 815.6. It asserted that any "citation" or "order" from Cal-OSHA did not "impose a mandatory duty to guarantee the safety of [Wong] or her husband." Finally, the City asserted that liability against a public entity must be based on

6

statute, but there was no statutory basis for Wong's claim of negligence.[2]

## C.    Opposition and reply

In her opposition, Wong asserted that immunity under section 855.4 was not applicable.  She argued that section 855.4 requires public health decisions to "be made in due care," and "once the decision has been made, there is no immunity from liability for negligence in carrying it out."  She argued that the City "did not act with due care in omitting to respond to Cal-OSHA violations."

Wong also argued that  the City owed her a duty to provide disease-free conditions of public properties, which was "a duty separate and distinct from its duty as [Wong's] husband's employer."  Wong rejected the City's contention that it could not be liable because Wong contracted typhus in her own home, asserting that her illness was proximately caused by the dangerous conditions of public property.

The City filed a reply reiterating its arguments from the demurrer.

---

[2]The City further asserted that Wong's claims were barred by workers' compensation exclusivity, which bars derivative injury claims by non-employee third parties.  The City requested judicial notice of a workers' compensation award to Chen, acknowledging an illness that arose out of the scope of employment and a lifetime disability of two percent.  The City asserted that the Workers' Compensation Appeals Board had exclusive jurisdiction of the matter.  The City does not assert these contentions on appeal.

7

## D.    Hearing and decision

The trial court issued a tentative ruling overruling the demurrer. The court found that Wong's claim of exposure to typhus was similar to "take-home exposure" to asbestos discussed in *Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1140 (*Kesner*). In that case, the Supreme Court held, "Where it is reasonably foreseeable that workers, their clothing, or personal effects will act as vectors carrying asbestos from the premises to household members, employers have a duty to take reasonable care to prevent this means of transmission." In addressing the City's demurrer, the trial court found that Wong, "like the plaintiff in *Kesner*, suffered a distinct and separate [injury] from her husband, Chen."

The court also found that the City was not immune under section 855.4. The court noted that "[t]here is very little case law concerning Government Code § 855.4." The court quoted a California Law Revision Commission comment stating, "Public health officials and public entities should not be liable for determining whether to impose quarantines or otherwise take action to prevent or control the spread of disease, where they have been given the legal power to determine whether or not such action should be taken. Where the law gives a public employee discretion to determine a course of conduct, liability should not be based upon the exercise of that discretion in a particular manner, for this would permit the trier of fact to substitute its judgment as to how the discretion should have been exercised for the judgment of the person to whom such discretion was lawfully committed. But when a public official has a legal duty to act in a particular manner, he should be liable for his wrongful or negligent failure to perform the duty; and his

8

employing public entity should be liable if such failure occurs in the scope of his employment." (4 Cal. Law Rev. Comm. Reps. 801 (1963) pp. 830-831, <http://www.clrc.ca.gov/pub/Printed-Reports/Pub043.pdf> [as of March 16, 2021], archived at <https://perma.cc/Y2GW-6MXM>.)

The court stated that the City had a legal duty toward Wong "[a]s set forth in *Kesner*," and could be liable for any injury caused by lack of due care under section 855.4, subdivision (b). Because Wong "clearly alleges that [the City] negligently carried out and/or failed to maintain a disease-free area in Central Division," the immunity in section 855.4 "does not apply." The court further found that the factual allegations of the first and second causes of action were sufficient, and therefore stated that it intended to overrule the demurrer.

At the hearing on the demurrer on September 21, 2020, counsel for the City argued that the court's tentative ruling was erroneous in that it found that immunity under section 855.4 did not apply. The court asked, "When does 855.4(b) – when does that trigger? Because 855.4(b) specifically says the public entity has to act with due care." Counsel for the City asserted that immunity must be broad, because if "the court finds liability, the court is then exercising judgment on how the entity should have exercised discretion, which is not proper." Counsel for the City also suggested that the court was "saying that the City did not exercise . . . due care," and the court responded, "I'm basically saying there's enough facts at this phase of the case. I'm not inclined to dismiss it. [¶] I think either a summary judgment or a trial is necessary."

The court adopted its tentative ruling as the final order on the demurrer. The City filed a petition for writ of mandate with

9

this court on November 19, 2020. We issued an alternative writ requiring the superior court to vacate its ruling on the basis that Wong's complaint is barred by governmental immunity, or show cause why a writ of mandate should not issue. Wong filed a return asking that the demurrer ruling be upheld. The superior court held a hearing on an order to show cause on January 28, 2021, but did not change its ruling.

## DISCUSSION

The City asserts that the trial court erred in finding that immunity did not bar Wong's action. It asserts that it cannot be liable for an allegedly dangerous condition of property with which Wong had no contact, and that under section 855.4 it is immune for allegedly failing to prevent Wong's exposure to illness. Wong asserts that direct contact with the dangerous condition on the property was not required because the cause of her illness is clear, and that governmental immunity is not evident from the facts alleged in her complaint, so the demurrer was correctly overruled.

Wong's premises liability claim under section 835 and the City's immunity contention under section 855.4 arise from the Government Claims Act, section 810, et seq. (the Act). "Enacted in 1963, the Government Claims Act is a comprehensive statutory scheme governing the liabilities and immunities of public entities and public employees for torts." (*Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 803.) "The basic architecture of the Act is encapsulated in Government Code section 815. Subdivision (a) of that section makes clear that under the [Act], there is no such thing as common law tort liability for public entities; a public entity is not liable for an injury '[e]xcept as otherwise provided by statute.'" (*Id.* at p. 803,

10

citing § 815 and *Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 897.) "But even when there are statutory grounds for imposing liability, subdivision (b) of section 815 provides that a public entity's liability is 'subject to any immunity of the public entity provided by statute.'" (*Quigley, supra*, 7 Cal.5th at p. 804.)

Generally, we review a demurrer de novo, and "give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law." (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.) In addition, because "all governmental tort liability is based on statute, the general rule that statutory causes of action must be pleaded with particularity is applicable. Thus, 'to state a cause of action against a public entity, every fact material to the existence of its statutory liability must be pleaded with particularity.'" (*Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 795 (*Lopez*).)

## A.    Wong has not alleged a cognizable duty

Wong alleged causes of action for a dangerous condition of public property and common law negligence due to the City's alleged failure to maintain the subject property. "The sole statutory basis for imposing liability on public entities as property owners is Government Code section 835." (*Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340, 1347.) Section 835 states, "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the

11

dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that . . . [t]he public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." (§ 835, subd. (b).)

The City asserts that because Wong never visited the property at issue, it owed no duty to Wong with respect to the property and cannot be liable for her injuries.[3] Wong accuses the City of "mixing apples and oranges," and asserts that duty is irrelevant because she can prove her injuries were proximately caused by the dangerous condition of the property.

We agree with the City that duty must be considered. "When addressing the Act's application, we have consistently regarded actionable duty and statutory immunity as separate issues, holding that in general, an immunity provision need not even be considered until it is determined that a cause of action would otherwise lie against the public employee or entity." (*Caldwell v. Montoya* (1995) 10 Cal.4th 972, 985 (*Caldwell*); see

---

[3]The City also contends that the trial court erred in finding that the City and Wong were in a "special relationship" giving rise to potential liability. This contention is somewhat perplexing, because although the trial court found a duty, it did not state that a special relationship existed. (See, e.g., *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 620-622 [discussing the features of a special relationship].) Wong pointed this out in her return, but the City reiterates its argument in its reply. Because the trial court did not conclude that a special relationship existed and neither party suggests that a special relationship exists here, we do not address the City's arguments on the issue.

12

also *Creason v. Department of Health Services* (1998) 18 Cal.4th 623, 630 [when considering liability under section 815.6, "the question of possible statutory liability for breach of a mandatory duty ordinarily should precede the question of statutory immunity"].) We therefore consider the City's contention that it did not owe Wong a duty under section 835 because she never visited the property at issue.

"Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.)

Section 835 "imposes a duty on public entities not to maintain property in a 'dangerous condition.'" (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1134 (*Zelig*).) However, section 835 does not expressly state to whom that duty is owed. The City points out that authorities discussing dangerous conditions of public property focus on either the "use" of the property or harm to adjacent property. For example, a dangerous condition of public property is defined as "a condition of property

13

that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830, subd. (a).) The Supreme Court has stated that "[p]ublic property is in a dangerous condition within the meaning of section 835 if it 'is physically damaged, deteriorated, or defective in such a way as to foreseeably endanger those using the property itself.'" (*Cordova v. City of Los Angeles* (2015) 61 Cal.4th 1099, 1105; quoting *Bonanno v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139, 148 (*Bonanno*).) The City asserts that Wong never visited or "used" the property at issue, and there is no authority supporting a finding of liability for a dangerous condition of public property with which the plaintiff has had no contact.

Wong contends that physical contact with the property is not required, because causation can be established nonetheless. She asserts, "There is nothing in section 835 (nor any case interpreting that section) negating liability if a dangerous condition caused the plaintiff's injuries just because the plaintiff happened not to be on the government's property when he or she was injured." She relies on cases such as *Osborn v. City of Whittier* (1951) 103 Cal.App.2d 609 (*Osborn*), in which the plaintiff alleged that the defendant city "maintained [a] rubbish disposal dump in a dangerous condition, permitting the continued burning of rubbish therein, under all weather conditions, without supervision." (*Id.* at p. 612.) "On June 22, 1949, a fire started in the rubbish disposal dump and spread through and over surrounding property to plaintiff's property, burned and destroyed 248 avocado trees, full grown and bearing, and the crops thereon, damaged the sprinkler system and fence

14

posts, and destroyed 750 tree props." (*Id*. at p. 613.)  The defendant city argued that it could not be liable to the plaintiff, because her property was located several miles from the dump where the fire began.

The Court of Appeal, relying on "the Public Liability Act of 1923 and The Claims Act of 1931" (*Osborn, supra,* 103 Cal.App.2d at p. 613), rejected this contention.  It found that the fire could be deemed a proximate cause of the damage to the plaintiff's nearby property, because "[g]enerally, a fire, however far it may go, is one continuous fire—the same fire—and is the proximate cause of all the injuries and damage it may produce in its destructive march, whether it goes to abutting property or several miles." (*Id*. at p. 618.) The court continued, "We hold, therefore, that liability is not, as a matter of law, dependent upon proximity of the damaged property to the dangerous condition, but is dependent upon the dangerous condition being a proximate cause of the damage, and that the question is one of fact." (*Ibid*.)

More recent cases decided under the current Government Claims Act have found that liability may be found where a dangerous condition of public property causes personal injuries to occur on an adjacent property. (See, e.g., *Bonanno, supra,* 30 Cal.4th at p. 151 [transit authority could be held liable when pedestrians were injured on adjacent property while attempting to reach bus stop in an allegedly dangerous location].)  Similarly, liability may be found when adjacent property creates a dangerous condition on the subject public property.  (See, e.g., *Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 841 [liability may exist under section 835 when "a sign located on property adjacent to a City intersection allegedly obstructed the view and rendered the intersection dangerous"]; *Bakity v. County*

15

*of Riverside* (1970) 12 Cal.App.3d 24, 30 [dangerous condition may exist where trees on private property obscured the view of approaching vehicles at an intersection].) In these cases, however, the plaintiffs have been injured on or near the public property, while using or attempting to use the public property. Even in *Osborn*, which was decided before the enactment of the Government Claims Act, liability arose from the fact that the dangerous condition escaped the public property and reached the plaintiff's nearby property. Wong cites no case, and we have found none, finding liability under section 835 where the plaintiff has had no physical contact with the dangerous condition on the subject property or on any adjacent property.

Wong also contends that the trial court was correct to rely on *Kesner, supra*, 1 Cal.5th 1132, to find that the City owed her a duty of care for "take-home" exposure to typhus. In *Kesner*, the Supreme Court found that "the duty of employers and premises owners to exercise ordinary care in their use of asbestos includes preventing exposure to asbestos carried by the bodies and clothing of on-site workers. Where it is reasonably foreseeable that workers, their clothing, or personal effects will act as vectors carrying asbestos from the premises to household members, employers have a duty to take reasonable care to prevent this means of transmission." (*Id*. at p. 1140.) The court relied on the factors articulated in *Rowland v. Christian* (1968) 69 Cal.2d 108, 113 (*Rowland*) and Civil Code section 1714, subdivision (a), which states in part, "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person." (*Kesner, supra*, 1 Cal. 5th at p. 1143.) The court noted that "'the general duty to

16

take ordinary care in the conduct of one's activities' applies to the use of asbestos on an owner's premises or in an employer's manufacturing processes," and considered whether property owners and employers should be liable to "individuals who were exposed to asbestos by way of employees carrying it on their clothes or person." (*Id*. at p. 1144.)

*Kesner* involved two different plaintiff families. One family, the Havers, asserted a premises liability claim, contending that the wife, Lynne, developed mesothelioma as a result of exposure to asbestos on the clothing of her husband, Mike. (*Kesner, supra*, 1 Cal. 5th at p. 1158.) The defendant, BNSF, asserted that such a claim could not lie where the plaintiff's "'only connection to the property at issue is an encounter with someone who visited the site.'" (*Id*. at p. 1159.) The court rejected this argument: "Although this last statement is superficially correct, it misconstrues the Havers' theory of negligence. It is not Lynne's contact with Mike that allegedly caused her mesothelioma, but rather Lynne's contact with *asbestos fibers that BNSF used on its property*." (*Ibid*. [emphasis in original].) The court noted that "liability for harm caused by substances that escape an owner's property is well established in California law." (*Ibid*., citing *Sprecher v. Adamson Companies* (1981) 30 Cal.3d 358 [uphill landowner had a duty to correct or control a landslide condition that damaged the adjacent downhill home]; *Davert v. Larson* (1985) 163 Cal.App.3d 407 [landowner could be held liable for an escaped horse that collided with the plaintiffs' car]; *Curtis v. State of California ex rel. Dept. of Transportation* (1982) 128 Cal.App.3d 668 [upholding verdict finding the state negligent in constructing defective fences that permitted a cow to escape and create a dangerous condition by

17

entering a public highway].)  The court held that because
"BNSF's predecessors are alleged to have engaged in active
supervisory control and management of asbestos sources, the
Havers' premises liability claim is subject to the same
requirements and same duty analysis that apply to a claim of
general negligence."  (*Id*. at p. 1161.)

Here, the trial court held, "In the case before this court,
plaintiff claims that she was exposed to typhus as a result of
take-home exposure from her husband's work at the City of Los
Angeles police station and City buildings.  As set forth in *Kesner*,
plaintiff may bring a take home exposure action against her
husband's employer, the City of Los Angeles."  The court also
stated multiple times in its ruling that the City owed a duty to
Wong, "as set forth in *Kesner*."

The City contends that the court's reliance on *Kesner* was
inappropriate, in part because *Kesner* involved private companies
rather than public entities.  We agree.  The Supreme Court in
*Kesner* relied on Civil Code section 1714 and the *Rowland* factors,
but pursuant to the Act, liability for a public entity must be based
on statute.  The Supreme Court has "declined to hold that 'public
entity liability under [Government Code] section 835 is
coextensive with private liability for maintaining property in an
unsafe condition.'"  (*Vasilenko v. Grace Family Church* (2017) 3
Cal.5th 1077, 1093, quoting *Bonanno, supra*, 30 Cal.4th at p.
152.)  In *Zelig, supra,* 27 Cal.4th at p. 1132, another case
involving a claim of a dangerous condition of public property, the
Supreme Court stated, "To the extent the Court of Appeal
determined that the provisions of Civil Code section 1714
properly may be applied to extend the liability of a public entity
in this setting beyond the usual reach of the 'dangerous condition'

18

provisions of Government Code section 835, we conclude that the appellate court was in error.  Such a determination by the court ignores the general rule that the government does not, by assuming responsibility for providing police services, impose upon itself a legal duty that would give rise to civil liability."  And the Supreme Court in *Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175, 1183, stated, "[D]irect tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care, and not on the general tort provisions of Civil Code section 1714."  Thus, the trial court erred in relying on *Kesner*'s negligence analysis to find a duty on the part of the City, a public entity.

In addition, the Supreme Court in *Kesner* pointed out that the plaintiffs' liability allegations were not premised on the wife's contact with the husband, but instead on the wife's contact with the hazardous condition from the defendant's premises that had been carried home on the husband's clothing.  Here, by contrast, Wong has not alleged that Chen brought home infected fleas or rodents, thus exposing Wong to the conditions of the property.  Instead, Wong alleges that she contracted typhus from Chen, months after Chen first became ill. Thus, the basis for premises liability the Supreme Court relied upon in *Kesner*—that a private premises owner may be held liable for hazardous substances that have escaped the property and caused harm offsite—is not applicable here.

Thus, because Wong had no contact with the subject property and she has not alleged exposure to any condition of the subject property, Wong has not alleged facts to support a finding that the City had a duty to her.  The demurrer should have been

19

sustained on this basis.  But even if the City had a duty toward Wong, it was nevertheless immune from liability under section 855.4.

## B.     The City has immunity under section 855.4

"[T]he immunity of section 855.4 is applicable to causes of action for alleged dangerous conditions of public property under section 835." (*Wright, supra*, 93 Cal.App.4th at p. 688.)  This is consistent with "[t]he Act's purpose that *specific immunities* should prevail over *general rules of actionable duty*." (*Caldwell, supra,* 10 Cal.4th at p. 985 [emphasis in original].)

Section 855.4 states in full:

"(a) Neither a public entity nor a public employee is liable for an injury resulting from the decision to perform or not to perform any act to promote the public health of the community by preventing disease or controlling the communication of disease within the community if the decision whether the act was or was not to be performed was the result of the exercise of discretion vested in the public entity or the public employee, whether or not such discretion be abused.

"(b) Neither a public entity nor a public employee is liable for an injury caused by an act or omission in carrying out with due care a decision described in subdivision (a)."

By its plain language, section 855.4, subdivision (a) immunizes any "decision" relating to the control of the communication of disease that is "the result of the discretion vested in the public entity."  Such a "decision" is immune, "whether or not such discretion [was] abused."  Under subdivision (b), immunity attaches to any act or omission performed while carrying out such a decision, as long as the act or omission was performed with due care.

20

This reading of section 855.4 is in accord with the California Law Revision Commission cited by the trial court: "Public health officials and public entities should not be liable for determining whether to impose quarantines or otherwise take action to prevent or control the spread of disease, where they have been given the legal power to determine whether or not such action should be taken. . . . But when a public official has a legal duty to act in a particular manner, he should be liable for his wrongful or negligent failure to perform the duty; and his employing public entity should be liable if such failure occurs in the scope of his employment." (4 Cal. Law Rev. Comm. Reps., *supra*, at pp. 830-831, <http://www.clrc.ca.gov/pub/Printed-Reports/Pub043.pdf> [as of March 16, 2021], archived at <https://perma.cc/Y2GW-6MXM>.)

The City asserts that the trial court erred in finding that section 855.4 did not provide governmental immunity for Wong's claims. The City relies on *Wright, supra*, 93 Cal.App.4th 683, the only published case to analyze the application of that statute.[4] In *Wright*, the Wright family lived in a mobile home on property

---

[4] One other published case briefly addressed the application of section 855.4. In *Sava v. Fuller* (1967) 249 Cal.App.2d 281, a state-employed botanist was hired to analyze a plant substance a child may have ingested; the botanist incorrectly concluded that the substance was toxic. The child's parents sued, alleging that the child died as a "proximate result of the incorrect analysis because the treatment by the physician was thereafter based upon the misinformation that ingestion of toxic materials rather than bronchopneumonia was the child's ailment." *(Id.* at p. 283.) The court rejected the botanist's assertion of immunity under section 855.4, finding simply that "[t]he acts charged here were not within the purview of that section." *(Id.* at p. 292.)

owned by the City of Los Angeles and leased to Inyo County. (*Id*. at p. 685.) The property included "a municipal airport with runways, terminals, parking and other miscellaneous related structures, as well as an old, abandoned hospital building, a pump house, a communications center, and several mobilehomes." (*Ibid*.) The abandoned hospital building was "located between 60 and 100 yards from their home. Being in such close proximity to her home, Misty, the Wrights' daughter, would often explore in and around the old hospital building and she would remove some old records from that building. Shortly after an excursion into the old hospital building in June 1999, Misty contracted hantavirus pulmonary syndrome . . . and died on June 21." (*Id*. at pp. 685-686.) The Court of Appeal noted that the "The hantavirus is spread via contact with infected deer mice feces and dried urine." (*Id*. at p. 686, fn. 2.) The Wrights sued the City for wrongful death, and the trial court sustained the City's demurrer "on the ground that the [wrongful death] cause of action failed to state facts sufficient to constitute a cause of action in light of the immunity granted by section 855.4." (*Id*. at pp. 686-687.)

The Court of Appeal affirmed. The court first rejected the Wrights' contention that section 855.4 was inapplicable to a cause of action involving a dangerous condition of public property. The court stated, "Utilizing the clear language in the statute, the immunity of section 855.4 is applicable to causes of action for alleged dangerous conditions of public property under section 835." (*Wright, supra*, 93 Cal.App.4th at p. 688.) The court also stated that sections 835 and 855.4, read together, "[make] it clear that the immunity provided in section 855.4 prevails over the liability established in section 835." (*Id*. at p. 689.)

22

The court next held that 855.4 applies "'where a public entity's substandard maintenance of public property is the sole cause in fact of an individual[']s exposure to and contraction of a deadly disease.'" (*Wright, supra*, 93 Cal.App.4th at p. 689.) The court quoted with approval the City's argument that "'[t]he presence of germs, bacteria and viruses and the like, many of which are microscopic, and which may or may not be contained in saliva, animal droppings, or any multitude of other forms, upon the vast public property of this state, cannot . . . be viewed as liability events, without some specifically stated intent of the [L]egislature.'" (*Id.* at p. 690 [alterations in *Wright*].) The court added, "Although the Wrights argue that City is responsible for maintaining a dangerous condition of property by failing to rid the property of the virus-infected mice, the fact remains that the property involved in this case included old, abandoned, buildings that were not open to the public. Given that fact alone, City should not be held liable for its 'omissions relating to . . . the prevention or control of' the hantavirus." (*Ibid.*, quoting § 855.4, subd. (a).)

The City asserts that "*Wright* compels the conclusion that section 855.4 immunizes the City from Wong's lawsuit." It argues that the cases are extremely similar in that both Wong and the Wrights alleged illness spread by rodents, and lack of action on the part of the City to maintain the property where the infection occurred. We agree that much of the *Wright* court's reasoning is applicable here. As in *Wright*, Wong has alleged infection from the presence of viruses in infected fleas on rodents on City property, and that the City allowed the disease to spread by failing to maintain the property adequately. Moreover, the spread of hantavirus in *Wright* and the spread of typhus here fall

23

directly within the language of section 855.4 addressing the "public health of the community by preventing disease or controlling the communication of disease within the community." And we agree with the *Wright* court's statement that section 855.4 applies "'where a public entity's substandard maintenance of public property is the sole cause in fact of an individual[']s exposure to and contraction of a deadly disease.'" (*Wright, supra*, 93 Cal.App.4th at p. 689.)

The trial court dismissed the reasoning of *Wright* because that case involved an abandoned building, and, "In the present case, unlike the abandoned hospital building, Central Division Police Station was not an abandoned building, closed off to the public." We disagree that this distinction is relevant. Nothing in section 855.4 suggests that its application is limited to abandoned buildings, and although the *Wright* court mentioned the building was abandoned, that factor was not the basis for most of its reasoning.

Wong asserts that *Wright* does not support the City's position, because "at no point did [the *Wright* court] analyze just what a defendant must prove to establish an exercise of discretion sufficient to trigger" section 855.4. She argues that before a public entity defendant may assert section 855.4 immunity, it must show that there was "an exercise of discretion sufficient to trigger the application" of section 855.4.

Wong relies on cases interpreting section 820.2, which states in full, "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Wong contends that because both section 855.4 and

24

section 820.2 include the language "was the result of the exercise of the discretion vested in" the public employee or entity, we should interpret section 855.4 similarly.

Section 820.2 codified a longstanding rule to ensure that "'public employees will continue to remain immune from liability for their *discretionary* acts within the scope of their employment.'" (*Caldwell, supra*, 10 Cal.4th at p. 980 [emphasis added].)  Thus, in determining whether immunity applies under section 820.2, courts often attempt to "draw[ ] the line between the immune 'discretionary' decision and the unprotected ministerial act." (*Johnson v. State of California* (1968) 69 Cal.2d 782, 793 (*Johnson*).)  The Supreme Court has stated that "a 'workable definition' of immune discretionary acts draws the line between 'planning' and 'operational' functions of government. [Citation.]  Immunity is reserved for those '*basic policy decisions* [which have] . . . been [expressly] committed to coordinate branches of government,' and as to which judicial interference would thus be 'unseemly.'" (*Caldwell, supra*, 10 Cal.4th at p. 981, quoting *Johnson, supra*, 69 Cal.2d at pp. 793-794 (italics in *Johnson*).)  On the other hand, "lower-level, or 'ministerial,' decisions that merely implement a basic policy already formulated" are not immune under section 820.2.  (*Caldwell, supra*, 10 Cal.4th at p. 981; see also *Elton v. County of Orange* (1970) 3 Cal.App.3d 1053, 1057 ["Immunity is not achieved because the acts complained of are not 'discretionary acts' within the meaning of" section 820.2]; *Lopez, supra,* 40 Cal.3d at p. 794 ["an individual bus driver's decision concerning what form of protective action to take in a particular case" was "the kind of ministerial, 'operational' action . . . that is not immunized by Government Code section 820.2."].)

Although section 820.2 and 855.4 include similar language, there are important differences between them. Section 820.2 addresses only public employees, while section 855.4 addresses both public employees and public entities.  In general, the Act "establishes the basic rules that public *entities* are immune from liability except as provided by statute (§ 815, subd. (a)), [and] that public *employees* are liable for their torts except as otherwise provided by statute (§ 820, subd. (a))." (*Caldwell, supra*, 10 Cal.4th at p. 980 [emphasis in original].)  In addition, section 820.2 addresses only the "act or omission" of a public employee, while section 855.4 applies to a public employee's or entity's "decision to perform or not to perform any act."  These distinctions are relevant to the scope of liability, and as such we find cases interpreting section 820.2 are not directly on point.

But even if we were to accept Wong's contention that the statutes should be treated similarly, we find no support for her contention that the City was required to prove at the demurrer stage that immunity applies.  She argues that the demurrer should have been overruled, because "there is nothing on the face of [the] complaint establishing that either the condition of the subject property generally or the transmission of typhus specifically was the result of a consciously made exercise of discretion as to a basic policy decision."

However, "[s]ince all California governmental tort liability flows from the California [Government] Claims Act [citations], the plaintiff must plead facts sufficient to show his [or her] cause of action lies outside the breadth of any applicable statutory immunity.  [Citations.]  He [or she] must plead 'with particularity,' '[e]very fact essential to the existence of statutory liability.'" (*Keyes v. Santa Clara Valley Water Dist.* (1982) 128

26

Cal.App.3d 882, 885-886; see also *Giannuzzi v. State of California* (1993) 17 Cal.App.4th 462, 467 [same]; *Nealy v. County of Orange* (2020) 54 Cal.App.5th 594, 602 [same].) Thus, to allege a viable cause of action against the City, Wong was required to allege facts showing that the City's actions did not fall within the statutory immunity in section 855.4. She did not do so.

Section 855.4, subdivision (a) immunizes "the decision to perform or not to perform any act to promote the public health of the community by preventing disease or controlling the communication of disease." Wong's allegations fall squarely within this section. She alleged that the City had actual or constructive notice that the property "was the subject of a typhus epidemic and that proactive conduct was required in order to ensure safety," but the City "permitted the conditions to remain unabated." Any such "decision" on the part of the City falls under the immunity in section 855.4, subdivision (a).

Wong did not allege that the City failed to comply with a non-discretionary, ministerial duty. Although she alleged that the City failed to comply with directives from Cal-OSHA, the City points out that such a failure cannot serve as a basis for liability. (See, e.g., *Ruiz v. Herman Weissker, Inc.* (2005) 130 Cal.App.4th 52, 64 [although Labor Code section 6400, subdivision (b) provides that Cal-OSHA may cite an employer for exposing employees to a hazard, "this statute does not create civil liability on the part of specified 'employers' to injured employees, for breach of a nondelegable duty or otherwise"].) Wong does not contradict this contention.

Wong alleged that the City "failed to remedy the dangerous condition to discharge their mandatory duty as required by Government Code § 815.6." However, section 815.6 does not

27

impose any mandatory duty; it simply states that a public entity may be liable if it fails to comply with an existing mandatory duty.[5] Wong has not identified any mandatory duties the City violated with respect to its decisions relating to the spread of typhus on City property. Thus, Wong has not alleged facts sufficient to demonstrate that the City's actions or omissions do not constitute a "decision to perform or not perform any act" to "control[ ] the communication of disease within the community" which was within "the discretion vested in" the City.

Wong asserts that even if the immunity in section 855.4, subdivision (a) applies, she alleged that the City "acted without due care in implementing" its decision, and therefore the City's actions fall outside the immunity provisions in section 855.4, subdivision (b). However, Wong did not allege facts in her complaint that the City carried out any particular "act or omission" without due care. To the contrary, she alleged that the decision itself—to not abate the allegedly dangerous condition of the property—was the cause of her injury. As such, Wong failed to allege facts demonstrating that the immunity under section 855.4, subdivision (b) does not apply.[6]

_____

[5] Section 815.6 states in full, "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

[6] For the first time at oral argument, Wong requested leave to amend her complaint to address any ambiguities in her pleadings. An amendment would not change Wong's basic

28

## DISPOSITION

Let a peremptory writ of mandate issue directing the respondent court to vacate its order overruling the City's demurrer, and enter a new order sustaining the demurrer. The alternative writ is discharged. The City is entitled to recover its costs in this original proceeding.

## CERTIFIED FOR PUBLICATION

COLLINS, J.

We concur:

MANELLA, P. J.

WILLHITE, J.

---

allegations against the City, however, or resolve the issues of duty or immunity, which, as discussed herein, are fatal to her causes of action. We therefore deny Wong's request.

29