[No. E029257. Fourth Dist., Div. Two. Nov. 2, 2001.]

DAVID WRIGHT et al., Plaintiffs and Appellants, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

COUNSEL

Gresham, Savage, Nolan & Tilden, Duke D. Rouse and Donovan C. Collier for Plaintiffs and Appellants.

Paul N. Bruce, County Counsel; Law Offices of John D. Kirby and John D. Kirby for Defendants and Respondents.

OPINION

**HOLLENHORST, Acting P. J.**—Plaintiffs David and Erma Wright appeal from the judgment in favor of the City of Los Angeles, acting by and through the Los Angeles Department of Water and Power (City), entered after its demurrer was sustained without leave to amend by the trial court.[1]

### PROCEDURAL BACKGROUND AND FACTS

■ "Because this is an appeal of a judgment of dismissal entered after the sustaining of a general demurrer, '. . . we accept as true all the material allegations of the complaint.' [Citation.]" (*LiMandri v. Judkins* (1997) 52 Cal.App.4th 326, 334 [60 Cal.Rptr.2d 539].) The Wrights' complaint discloses the following facts:

The Wrights lived in a mobilehome in an area in Inyo County referred to as the Bishop Airport property (Property) which is owned by City. The Property consists of approximately 895 acres upon which is situated a municipal airport with runways, terminals, parking and other miscellaneous related structures, as well as an old, abandoned hospital building, a pump house, a communications center, and several mobilehomes.

In 1974, City leased the entire Property to the County of Inyo (County) for a term of 44 years. In January 1994, the County entered into a Bishop Airport Mobile Home Space Lease with the Wrights whereby they leased a space for a mobilehome situated upon the Property. Pursuant to the lease, the Wrights were required to pay annual rent of $450. Additionally, the Wrights were required to report any acts of vandalism, malicious damage, or "any other hazard that may occur upon the Bishop Airport property."

The Wrights' home is located on the westerly portion of the Property. The old hospital building is located between 60 and 100 yards from their home. Being in such close proximity to her home, Misty, the Wrights' daughter,

---

[1]See footnote 5, *post*.

would often explore in and around the old hospital building and she would remove some old records from that building. Shortly after an excursion into the old hospital building in June 1999, Misty contracted hantavirus pulmonary syndrome[2] and died on June 21.

On November 12, 1999, the Wrights filed a claim for damages with County as a result of Misty's death. On November 24, they filed a claim for damages with City. Both claims were rejected.

On June 20, 2000, the Wrights filed a complaint against City and County for wrongful death and nuisance.[3] City demurred. On September 28, 2000, the trial court sustained City's demurrer as to the wrongful death cause of action with leave to amend on the grounds (1) the claim failed to allege a dangerous condition of public property, and (2) Government Code section 855.4[4] shielded City from liability for the alleged conduct and resulting death of Misty. Regarding the Wrights' second cause of action for nuisance, City's demurrer was sustained without leave to amend on the ground the Wrights failed to include a claim for nuisance in their claim for damages filed on the City in November 1999.

On October 13, 2000, shortly after the time for filing the amended complaint had expired and prior to the Wrights' filing of their amended complaint, City filed an ex parte application for dismissal of the action pursuant to Code of Civil Procedure section 581, subdivision (f)(1) and (2), and California Rules of Court, rule 325(e) and (f). On October 18, the Wrights filed their first amended complaint. On November 21, City moved to strike and dismiss the first cause of action (Code Civ. Proc., § 581, subd. (f)(2); Cal. Rules of Court, rule 325(f)), and dismiss the second cause of action (Code Civ. Proc., § 581, subd. (f)(1)).

Prior to December 18, 2000, the Wrights agreed they should not have refiled the second cause of action for nuisance and did not oppose the City's motion to strike and dismiss it. On December 18, the parties stipulated that City would also interpose a demurrer to the first cause of action on the ground that it failed to state facts sufficient to constitute a cause of action. On February 10, 2001, the court issued its written order which sustained the demurrer and granted the motion to strike. The trial court granted the demurrer on the ground that the first cause of action failed to state facts sufficient to constitute a cause of action in light of the immunity granted by

---

[2]The hantavirus is spread via contact with infected deer mice feces and dried urine.

[3]As a result of filing its demurrer, County was dismissed from the action on October 19, 2000. The Wrights failed to timely appeal County's dismissal and County is not a party to this appeal. Thus, we limit our discussion to City.

[4]All further statutory references are to the Government Code unless otherwise indicated.

section 855.4. The motion to strike and dismiss both causes of action was also granted on the grounds set forth in the moving papers. City was dismissed from the action under the provisions of Code of Civil Procedure sections 581, subdivision (f)(1) and (2). On March 29, the Wrights appealed. ■■ ■ The only issue before this court is the application of section 855.4 to support the trial court's decision in favor of City.[5]

## DISCUSSION

■■ The Wrights contend that (1) the trial court "took much [too] literal a view of the application of Section 855.4 and thereby failed to properly apply the law in this regard" and (2) "[e]ven if Section 855.4 does limit liability for dangerous conditions of public property, that Section is inapplicable under the facts of the present case."

A. *Section 855.4.*

According to the Wrights, "Chapter [2 of part 2 of division 3.6 of title 1] of the Governmental Tort Claims Act [(Tort Claims Act)], Government Code [s]ections 830 through 840.6 provide the exclusive circumstances under which a public entity may be held liable for injuries caused by a *dangerous condition of public property.*" Likewise, the Wrights contend that chapter 2 identifies the instances when a public entity is absolved of liability for a dangerous condition of public property, i.e., section 830.8 (immunity from damages arising from a failure to provide traffic or warning signals, signs or markings), section 831.2 (immunity from damages arising from the natural condition of unimproved land), or section 831.25 (immunity from damages resulting from the failure of unimproved land). The Wrights claim the inclusion of these specific immunity provisions in chapter 2 demonstrates the Legislature's awareness of certain instances in which public entities should not be liable for injuries caused by a dangerous condition of public property. Thus, they argue that because section 855.4 is not contained in chapter 2, the immunity of that section is inapplicable to causes of action for dangerous conditions of public property. We disagree.

---

[5]City contends that the judgment should be affirmed on the basis that (1) the trial court granted its motion to strike, and then dismiss, the only cause of action in the Wrights' amended complaint, and (2) the Wrights have not raised any issue regarding the trial court's order. Applying waiver, City argues there is no issue regarding the dismissal of the Wrights' complaint, and as such, there is no need to address the propriety of sustaining the demurrer without leave to amend. We disagree. Because the parties stipulated that City would also interpose a demurrer to be considered simultaneously with its motion to strike and dismiss, and because the trial court considered and ruled on the demurrer, the issue regarding the propriety of sustaining the demurrer without leave to amend is viable regardless of whether the Wrights appealed from the order granting City's motion to strike and dismiss.

Although section 855.4[6] is not contained in chapter 2, it is contained in chapter 5 of part 2 of division 3.6 of title 1 of the Tort Claims Act. Part 2 (entitled Liability of Public Entities and Public Employees) contains nine chapters and consists of sections 814 through 895.8. Both the liability statute (§ 835) regarding dangerous condition of public property and the immunity statute (§ 855.4) are within the same part, namely, part 2. The first chapter in part 2, chapter 1 (entitled General Provisions Relating to Liability), includes section 815 which, in relevant part, provides: "Except as otherwise provided by statute: [¶] . . . [¶] (b) *The liability of a public entity established by this part (commencing with Section 814) is subject to any immunity of the public entity provided by statute, including this part,* and is subject to any defenses that would be available to the public entity if it were a private person." (Italics added.) Utilizing the clear language in the statute, the immunity of section 855.4 is applicable to causes of action for alleged dangerous conditions of public property under section 835.[7]

Notwithstanding the above, the Wrights argue that the other statutes within the Tort Claims Act that provide immunity to a public entity and are not found in chapter 2 are "inapplicable when the claim is based on a dangerous condition of public property." In support of their argument, they quote the Legislative Committee comment to section 835 which states, "[t]he section is not subject to the discretionary immunity that public entities derive from Section 815.2, for this chapter itself declares the limits of a public entity's discretion in dealing with dangerous conditions of its property." (32 West's Ann. Gov. Code (1995 ed.) foll. § 835, p. 350.) According to the Wrights, this comment "makes it clear that Section 835 is not subject to general discretionary immunity Sections found elsewhere in the Tort Claims Act and that if any discretionary immunity is applicable, it must be provided for in Chapter [2]." We disagree.

[6] "(a) Neither a public entity nor a public employee is liable for an injury resulting from the decision to perform or not to perform any act to promote the public health of the community by preventing disease or controlling the communication of disease within the community if the decision whether the act was or was not to be performed was the result of the exercise of discretion *vested in the public entity or the public employee, whether or not such discretion* be abused. [¶] (b) Neither a public entity nor a public employee is liable for an injury caused by an act or omission in carrying out with due care a decision described in subdivision (a)." (§ 855.4.)

[7] "*Except as provided by statute*, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." (§ 835, italics added.)

Section 835 begins with the language "Except as provided by statute, . . ."[8] The use of such language means that liability is imposed unless another statute applies. In this case, that statute would be section 855.4. As is stated in a Legislative Committee comment to section 815, "In the following portions of this division, [(div. 3.6),] there are many sections providing for the liability of governmental entities under specified conditions. . . . [¶] In the following portions of this division, there also are many sections granting public entities and public employees broad immunities from liability. In general, the statutes imposing liability are cumulative in nature, i.e., if liability cannot be established under the requirements of one section, liability will nevertheless exist if liability can be established under the provisions of another section. On the other hand, under subdivision (b) of this section, *the immunity provisions will as a general rule prevail over all sections imposing liability.* Where the sections imposing liability or granting an immunity do not fall into this general pattern, the sections themselves make this clear." (32 West's Ann. Gov. Code, *supra*, foll. § 815, pp. 167-168, italics added.) That is precisely what sections 835 and 855.4 have done, i.e., made it clear that the immunity provided in section 855.4 prevails over the liability established in section 835. Accordingly, we reject the Wrights' argument to the contrary.

## B. *Applying Section 855.4 to This Case.*

Next, the Wrights assert that immunity found in section 855.4 is not applicable to the facts of this case because the section was "clearly intended to apply in situations where a public entity acts in response to an outbreak of a disease which affects the community as a whole such as small pox or tuberculosis, not situations where a public entity's substandard maintenance of public property is the sole cause in fact of an individual[']s exposure to and contraction of a deadly disease." We reject this claim for the following reasons.

First, in their opening brief, the Wrights have done no more than make the assertion that the immunity found in section 855.4 is not applicable to the facts of this case. ■ Generally, asserted grounds for appeal that are unsupported by any citation to authority and that merely complain of error without presenting a coherent legal argument are deemed abandoned and unworthy of discussion. (*Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3 [72 Cal.Rptr.2d 232], and cases cited therein.)

■ Second, even if we were to consider this assertion, we reject it for the reasons offered by City. As City states, "to hold that the immunity

---

[8]See footnote 7, *ante.*

provided by . . . Section 855.4 is not applicable to public property would be to subject public health facilities and all other owners of any public property, improved or unimproved, to be sued for failure to adequately keep the facility or unimproved property germ, bacteria and virus-free. There is no showing that this was the intent of the [L]egislature in the statutory scheme of . . . Sections 835 and 855.4. [¶] The presence of germs, bacteria and viruses and the like, many of which are microscopic, and which may or may not be contained in saliva, animal droppings, or any multitude of other forms, upon the vast public property of this state, cannot . . . be viewed as liability events, without some specifically stated intent of the [L]egislature."

Furthermore, as noted in the Law Revision Commission comments to section 855.4, "[t]his section declares a specific rule of discretionary immunity for acts or omissions relating to quarantines *or other measures for the prevention or control of disease*." (32 West's Ann. Gov. Code, *supra*, foll. § 855.4, p. 486, italics added.) Although the Wrights argue that City is responsible for maintaining a dangerous condition of property by failing to rid the property of the virus-infected mice, the fact remains that the property involved in this case included old, abandoned, buildings that were not open to the public. Given that fact alone, City should not be held liable for its "omissions relating to . . . the prevention or control of" the hantavirus.

DISPOSITION

The judgment is affirmed.

Richli, J., and Gaut, J., concurred.