Filed 3/27/23 (see concurring opinion)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ELIZABETH GREENWOOD, | B313852 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV39849) |
| v. | |
| CITY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daniel M. Crowley, Judge. Affirmed.

McNicholas & McNicholas, Matthew S. McNicholas, Douglas D. Winter, Jeffrey R. Lamb; Esner, Chang & Boyer, Stuart B. Esner and Kathleen J. Becket for Plaintiff and Appellant.

Michael N. Feuer, City Attorney, Scott Marcus, Senior Assistant City Attorney, and Shaun Dabby Jacobs, Deputy City Attorney, for Defendant and Respondent.

Plaintiff and appellant Elizabeth Greenwood appeals from a judgment in favor of defendant and respondent City of Los Angeles (the City), in a lawsuit alleging the City knowingly failed to remedy a dangerous condition on public property adjacent to Greenwood's place of work, as a result of which Greenwood contracted typhus.  The trial court entered this judgment after sustaining a demurrer on the basis that, under Government Code[1] section 855.4, the City was immune from liability.  We agree with the trial court.

Because the court correctly sustained the City's demurrer and did not abuse its discretion in denying leave to amend, we affirm the judgment.

## FACTS AND PROCEEDINGS BELOW

### A.    Allegations in the Operative Complaint

In reviewing an order sustaining a demurrer, "we must accept the facts pleaded as true and give the complaint a reasonable interpretation."  (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 762.)  The operative complaint alleges the following facts:

Greenwood began working as a deputy city attorney in 1996.  In approximately October 2018, her office was located in a city building at 200 North Main Street in Los Angeles (City Hall East).  Since September 2018 "there was a typhus epidemic in the downtown Los Angeles area, and the County of Los Angeles designated an area . . . almost immediately adjacent to" and "only two blocks outside" of City Hall East "as the 'typhus zone.'"  (Capitalization omitted.)  "[T]here was an accumulation of trash and other items at and adjacent to [City Hall East] that

_____

[1] Unless otherwise indicated, all further statutory references are to the Government Code.

2

caused and contributed to the outbreak of typhus." "[T]he City was on notice of this serious disease and its potential deadly consequences" and was "aware of the dangerous condition of [City Hall East] for a few months . . . yet ignored this knowledge and failed to take measures to protect against this dangerous condition."

Greenwood "was exposed to typhus because she commuted to [City Hall East] in a car and was exposed in the parking area connected to [City Hall East] and/or [she] was exposed outside [City Hall East] at or adjacent to the [Los Angeles] Mall, which is itself adjacent to [City Hall East]." In November 2018, Greenwood "contracted typhus . . . arising from or otherwise caused by the dangerous conditions of [City Hall East]." Specifically, she "became violently ill," including having a "high fever, stiff neck and severe headache, and [dizziness]," for which she was treated with multiple medications. Lab work and an infectious disease specialist ultimately diagnosed the source of these symptoms as "typhus fever Group IgG, IgM" and meningitis. Typhus can cause viral meningitis. "From the date she contracted typhus, and continuing for several months thereafter, [Greenwood] continued to suffer from extreme vertigo, dizziness, and disequilibrium, each of which are symptoms of typhus. Although [her] condition has somewhat improved, she continues to suffer such symptoms."

In December 2018, Greenwood "learned that the City was not planning to fumigate the City Hall East building or take any action to address the typhus outbreak in the adjacent areas." The City was also Greenwood's employer, and "[she] made a complaint to the California Division of Occupational Safety and Health . . . , better known as Cal/OSHA, regarding the typhus outbreak, and the fact that she contracted typhus." Cal/OSHA is

investigating her complaint.  Greenwood also "filed for workers' compensation benefits with the City."  (Capitalization omitted.) "[T]he City denied [the] claim, asserting that it was lacking evidence to support industrial causation for [Greenwood's] injur[ies]."

## B.     Greenwood's Lawsuit Against the City

Greenwood sued the City, alleging, under the theory of premises liability, that the City was responsible for her contracting typhus.  The City demurred, arguing only that Greenwood's claim was barred by Worker's Compensation Act exclusivity.[2]  The trial court sustained the demurrer with leave to amend.

Plaintiff then filed a first amended complaint (the FAC), alleging a single cause of action for dangerous condition of public property.  The City demurred and, citing section 855.4 immunity, the court sustained the demurrer with leave to amend.

Greenwood then filed a second amended complaint (the SAC), the operative complaint in this action, again alleging a single cause of action for dangerous condition of public property. The City again demurred, arguing it was immune under both section 855.4 and other code sections, and that Greenwood's claim was barred by Workers' Compensation Act exclusivity.  The trial court sustained the demurrer without leave to amend, ruling:

---

[2] Under the "Workers' Compensation Act [(Lab. Code, § 3200 et seq.),] . . . all employees are automatically entitled to recover benefits for injuries 'arising out of and in the course of . . . employment[,]' . . . [and] [w]hen the conditions of [such] compensation exist, recovery under the workers' compensation scheme 'is the exclusive remedy against an employer for injury or death of an employee.' " (*Privette v. Superior Court* (1993) 5 Cal.4th 689, 696–697; see Lab. Code, § 3600, subd. (a).)

4

"By failing to materially amend the FAC and making the same, previously rejected, arguments regarding the applicability of . . . section 855.4, [Greenwood] has demonstrated she is incapable of stating a viable cause of action against [the City]. [Citation.] [¶] The [c]ourt declines to consider [the City's] remaining arguments because the demurrer to the SAC is properly sustained pursuant to the applicability of . . . section 855.4."

On June 7, 2021, the court entered judgment for the City. Greenwood timely appealed.

## DISCUSSION

On appeal, Greenwood argues that the court reversibly erred in sustaining the demurrer to the SAC, and that neither section 855.4 immunity, nor Workers' Compensation Act exclusivity, defeats her claim on the facts alleged. In the alternative, she argues that she can allege additional facts to address any of the deficiencies in the SAC, and thus the trial court abused its discretion in denying her leave to amend. We review the ruling on the demurrer de novo, and the denial of leave to amend for an abuse of discretion. (See *T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162 ["[i]n reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory"]; *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 971 [denial of leave to amend following sustained demurrer reviewed for abuse of discretion].)

We agree with the lower court that section 855.4 renders the City immune to liability for the conduct alleged in the SAC. Because we can affirm the judgment solely on this basis, we need not and do not reach the parties' remaining arguments regarding

5

other potential bases for immunity or Workers' Compensation Act exclusivity.

Because Greenwood has not identified additional facts she could allege that would render her complaint viable, the court also did not abuse its discretion in denying her leave to amend.

## A. Law Relevant to Greenwood's Arguments

### 1. *Section 855.4*

The Tort Claims Act (§ 810 et seq.) (the Act) "establishes the basic rules that public entities are immune from [non-contractual] liability except as provided by statute (§ 815, subd. (a)), [and] that public employees are liable for their torts except as otherwise provided by statute (§ 820, subd. (a))." (*Caldwell v. Montoya* (1995) 10 Cal.4th 972, 980 (*Caldwell*), italics omitted.)

Section 835, pursuant to which Greenwood alleged her dangerous condition cause of action, is one such statutory basis for imposing liability on a public entity, but it again recognizes this liability exists "[e]xcept as provided by statute." (§ 835.)

Section 855.4, the primary subject of this appeal, provides one such exception to a public entity's liability under section 835 (or any other statute). It provides in full: "(a) Neither a public entity nor a public employee is liable for an injury resulting from the decision to perform or not to perform any act to promote the public health of the community by preventing disease or controlling the communication of disease within the community if the decision whether the act was or was not to be performed was the result of the exercise of discretion vested in the public entity or the public employee, whether or not such discretion be abused. [¶] (b) Neither a public entity nor a public employee is liable for an injury caused by an act or omission in carrying out with due care a decision described in subdivision (a)." (§ 855.4.)

Only two published California cases interpret section 855.4. One case is *Wright v. City of Los Angeles* (2001) 93 Cal.App.4th 683 (*Wright*), in which the appellate court considered the application of section 855.4 to a claim for dangerous condition of public property against a city. (See *Wright, supra*, at pp. 688,

7

690.)  In *Wright*, the plaintiffs lived near an abandoned hospital building that was not open to the public.  (*Id.* at pp. 685, 690.)  The plaintiffs' daughter "would often explore in and around the old hospital building." (*Id.* at p. 686.)  After doing so, she "contracted hantavirus pulmonary syndrome and died." (*Ibid.*, fn. omitted.)  "The hantavirus is spread via contact with infected deer mice feces and dried urine." (*Id.* at p. 686, fn. 2.)  The plaintiffs sued the City, and the trial court sustained a demurrer without leave to amend.  (*Id.* at pp. 686–687 & 687, fn. 5.)

Based on the immunity provided by section 855.4, the appellate court concluded that the trial court had properly sustained the City's demurrer.  (See *Wright, supra*, 93 Cal.App.4th at pp. 687, 689.)  *Wright* expressly rejected the argument that section 855.4 immunity should apply only " 'in situations where a public entity acts in response to an outbreak of a disease which affects the community as a whole such as small pox or tuberculosis, not situations where a public entity's substandard maintenance of public property is the sole cause in fact of an individual[']s exposure to and contraction of a deadly disease.' " (*Wright, supra*, at p. 689.)  The court explained that, " 'to hold that the immunity provided by . . . Section 855.4 is not applicable to public property would be to subject public health facilities and all other owners of any public property, improved or unimproved, to be sued for failure to adequately keep the facility or unimproved property germ, bacteria and virus-free.  There is no showing that this was the intent of the [L]egislature in the statutory scheme of . . . Sections 835 and 855.4.  [¶]  The presence of germs, bacteria and viruses and the like, many of which are microscopic, and which may or may not be contained in saliva, animal droppings, or any multitude of other forms, upon the vast public property of this state, cannot . . . be viewed as

8

liability events, without some specifically stated intent of the [L]egislature.' " (*Wright*, *supra*, at pp. 689–690.)

The second case, *City of Los Angeles v. Superior Court* (2021) 62 Cal.App.5th 129 (*Wong*), decided after Greenwood filed the SAC, involves facts similar to those alleged here. The plaintiff in *Wong* sued the City for negligence and a dangerous condition of public property, claiming "that her husband, [a] Los Angeles Police Department (LAPD) [o]fficer . . . , contracted typhus from unsanitary conditions in and around the Central Community Police Station where he worked," and that she then contracted it from living with him. (*Id.* at pp. 132–133.) "[Plaintiff] alleged that the City had actual or constructive notice that the property 'was the subject of a typhus epidemic and that proactive conduct was required in order to ensure safety,' but the City 'permitted the conditions to remain unabated.' " (*Id.* at p. 148.) Plaintiff further alleged that Cal/OSHA "issued citations to the [LAPD] Central Division and ordered the City to vacate and abate the unsanitary . . . [and] unhygienic . . . conditions on the City's property," but the City failed to do so. (*Id.* at p. 134.)

Based on section 855.4 immunity, however, Division Four of this court affirmed an order sustaining the City's demurrer. (*Wong, supra,* 62 Cal.App.5th at pp. 133–134, 144.) The court held that, at the demurrer stage, the plaintiff had the burden to allege facts sufficient to establish that the City's conduct was not immune under section 855.4. (*Wong, supra*, at p. 148.) In reaching this conclusion, the court rejected the plaintiff's argument that cases interpreting the concept of an exercise of discretion for purposes of section 820.2 also apply to

9

section 855.4.[3] (*Wong, supra*, 62 Cal.App.5th at p. 148.) The court opined that plaintiff had failed to meet her burden to survive the demurrer, because the complaint did not "allege[ ] facts sufficient to demonstrate that the City's actions or omissions do not constitute a 'decision to perform or not perform any act' to 'control[ ] the communication of disease within the community' which was within 'the discretion vested in' the City." (*Id.* at p. 149.)

The court also rejected the argument that, "[the plaintiff] [had] alleged that the City 'acted without due care in implementing' its decision, and therefore the City's actions fall outside the immunity provisions in section 855.4, subdivision (b)."[4] (*Wong, supra*, 62 Cal.App.5th at p. 149.) The court reasoned that the plaintiff had not alleged "that the City carried out any particular 'act or omission' without due care," but rather "that the decision itself—to not abate the allegedly dangerous condition of the property—was the cause of her injury." (*Ibid.*)

---

[3] Greenwood likewise raises arguments based on section 820.2 cases, one of which is virtually identical to the argument rejected by *Wong*. We summarize section 820.2 below. (See Discussion *post*, part A.2.) We also provide further detail regarding *Wong's* analysis of the differences between section 820.2 and section 855.4 in the context of discussing Greenwood's section 820.2 arguments.

[4] See section 855.4, subdivision (b) ("[n]either a public entity nor a public employee is liable for an injury caused by an act or omission *in carrying out with due care* a decision described in subdivision (a)," italics added).

## 2.     *Section 820.2*

Section 820.2 is a governmental immunity statute that no party argues is directly applicable to the facts alleged in the SAC.  The statute, however, does contain some of the same key language as section 855.4 that neither *Wong* nor *Wright* expressly interprets.  In some of her arguments on appeal, Greenwood urges us to adopt interpretations of this language that appear in section 820.2 cases.  We therefore provide some background on this section and the body of case law on which Greenwood so relies.

Section 820.2, enacted at about the same time as section 855.4 (see Stats. 1963, ch. 1681, p. 3269 [section 820.2] & Stats. 1963, ch. 1681, pp. 3281–3282 [section 855.4]), provides that, "[e]xcept as otherwise provided by statute, a public *employee* is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." (§ 820.2, italics added.)  "Section 820.2 codified a long-standing rule to ensure that ' "public employees will continue to remain immune from liability for their discretionary acts within the scope of their employment." ' (*Caldwell, supra,* 10 Cal.4th at p. 980 . . . .)"  (*Wong, supra*, 62 Cal.App.5th at p. 147.)  Cases analyzing whether there has been an "exercise of discretion" under section 820.2 " 'draw[ ] the line between "planning" [or] "operational" functions of government' " and " 'lower-level, or "ministerial," decisions that merely implement a basic policy already formulated.' "  (*Wong, supra,* at p. 147; see *Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 794 (*Lopez*) ["an individual bus driver's decision concerning what form of protective action to take in a particular case" was "the kind of ministerial, 'operational' action . . . that is not immunized

11

by . . . section 820.2," italics omitted]; *Johnson v. State of California* (1968) 69 Cal.2d 782 (*Johnson*) [parole officer's failure to warn a foster parent that child placed in her home had violent tendencies did not constitute an exercise of discretion, because what the officer chose to tell the family about the child was an operational decision in carrying out a mandatory duty to place the child in a foster home, not a policy decision]; *Elton v. County of Orange* (1970) 3 Cal.App.3d 1053, 1058 (*Elton*) [public employee's placement of a dependent child in a home where she was subject to abuse "may entail the exercise of discretion in a literal sense, but such determinations do not achieve the level of basic policy decisions, and thus do not, under the provisions of . . . section 820.2, preclude judicial inquiry into whether negligence of public employees was involved and whether such negligence caused or contributed to plaintiff's injuries"].)

In this context, the California Supreme Court in *Johnson* held that, because "[i]mmunity for 'discretionary' activities serves no purpose except to assure that courts refuse to pass judgment on policy decisions in the province of coordinate branches of government," "to be entitled to immunity [under section 820.2] the state must make a showing that such a policy decision, consciously balancing risks and advantages, took place." (*Johnson, supra*, 69 Cal.2d at pp. 794–795, fn. 8.) Thus, an exercise of discretion under section 820.2 requires "a policy decision [by a public employee], consciously balancing risks and advantages"; put differently, that the employee has "render[ed] a considered decision." (*Johnson, supra,* at pp. 794–795, fn. 8; accord, *Lopez, supra,* 40 Cal.3d at pp. 793–795.)

Given the nature of the facts necessary to satisfy such a requirement, section 820.2 cases have further held that "[s]uch a showing . . . [cannot be] made by [a defendant] at the demurrer

stage" and therefore it "would be error to sustain [a] demurrer based on . . . section 820.2." (*Lopez, supra*, 40 Cal.3d at p. 794; accord, *Elton, supra*, 3 Cal.App.3d at p. 1058 ["[s]uch a showing was not and could not have been made by the county at the demurrer stage and the trial court's ruling sustaining the demurrers by reason of the immunity provisions of . . . section 820.2 was also erroneous for this reason"].)

### B. The Court Properly Sustained the Demurrer to the SAC Based on Section 855.4 Immunity

Greenwood argues section 855.4 does not provide a basis on which to sustain the demurrer to the SAC because (1) "[i]t cannot be determined on the face of the complaint that [Greenwood's] harms were the result of an exercise of discretion," and (2) "[e]ven if there was an exercise of discretion . . . the City is not immune as a matter of law because [Greenwood] has alleged that the City acted without due care in implementing any such exercise of discretion." (Boldface omitted.)

#### 1. *Exercise of Discretion*

In arguing the court could not conclude that the SAC alleges facts reflecting an exercise of discretion sufficient to sustain a demurrer based on section 855.4 immunity, Greenwood urges that we should draw from section 820.2 case law in two ways. First, she argues that we should define the requisite "exercise of discretion" under section 855.4 as that term is defined under section 820.2—namely, as requiring a "considered decision" and analysis of risks and benefits. Second, she argues that, in any event, the plaintiff should not bear the burden of alleging facts establishing that such a considered decision did not occur in order to survive a demurrer based on section 855.4

13

immunity, just as a plaintiff does not bear such a burden with respect to section 820.2 immunity.  We disagree on both points.

As Division Four of this court noted in *Wong*, "[a]lthough section[s] 820.2 and 855.4 include similar language, there are important differences between them.  Section 820.2 addresses only public employees, while section 855.4 addresses both public employees and public entities." (*Wong, supra*, 62 Cal.App.5th at p. 148.)  This is significant, given that, "[i]n general, the Act [of which both section 855.4 and 820.2 are a part] 'establishes the basic rules that public *entities* are immune from liability except as provided by statute (§ 815, subd. (a)), [whereas] . . . public *employees* are liable for their torts except as otherwise provided by statute (§ 820, subd. (a)).' (*Caldwell, supra*, 10 Cal.4th at p. 980.)" (*Wong, supra*, at p. 148.)  "In addition, section 820.2 addresses only the 'act or omission' of a public employee, while section 855.4 . . . [requires] a public employee's or entity's 'decision to perform or not to perform any act.' " (*Wong, supra,* at p. 148.)

We agree with *Wong* that these differences between the statutes "are relevant to the scope of liability," so "cases interpreting section 820.2 are not directly on point" in interpreting and applying section 855.4.   (*Wong, supra*, 62 Cal.App.5th at p. 148.)  These differences also render the "considered decision" requirement courts developed for section 820.2 unnecessary and illogical in the context of section 855.4, subdivision (a).[5]  That requirement makes sense when determining whether to grant immunity for *actions* of a public *employee*, because a single human's actions may result

---

[5] *Wong* did not expressly consider whether to adopt, for the purposes of a section 855.4 analysis, the approach to defining exercise of discretion set forth in section 820.2 cases.

14

not only from his or her conscious consideration of options, but from instructions the employee receives, inadvertence, or habit. A public *entity,* by contrast, cannot inadvertently *decide* something. And absent a legal mandate to take a particular course of action, a public entity also cannot make a decision merely by following instructions.

Further, *Johnson* required a "considered decision" solely as a means of assuring that what section 820.2 immunizes is policymaking of the type government immunity is intended to insulate. (See *Johnson, supra*, 69 Cal.2d at p. 795, fn. 8.) This is necessary in the context of a statute like section 820.2 that could potentially cover public employee actions in any subject area, not all of which have relevance to the policymaking our state Supreme Court has indicated government immunity is designed to protect. Section 855.4, subdivision (a), by contrast, immunizes only decisions on how to protect the "public health of the community" or "prevent[ ] disease or control[ ] the communication of disease within the community"—areas that inherently implicate a policy-making function. We thus decline to blindly graft the "considered decision" requirement developed in *Johnson* onto a vastly different statute, in the context of which the requirement makes little sense.

The more applicable guidance we learn from *Johnson* and the body of section 820.2 case law Greenwood cites is the broader principle that, in interpreting language in government immunity statutes, we must "concentrat[e] on the *reasons* for granting [government] immunity." (*Johnson, supra*, 69 Cal.2d at p. 794, italics added; *id.* at p. 790 [" '[s]ince obviously no mechanical separation of all activities . . . as being either discretionary or ministerial is possible, the determination of the category into which a particular activity falls should be guided by the purpose

15

of the discretionary immunity doctrine' "].)  That purpose is "assur[ing] . . . judicial abstention in areas in which the responsibility for basic policy decisions has been committed to coordinate branches of government[,]" because "[a]ny wider judicial review . . . would place the court in the unseemly position of determining the propriety of decisions expressly entrusted to a coordinate branch of government."  (*Id.* at p. 793, italics omitted.) Requiring proof of a "considered decision" for immunity under section 855.4, subdivision (a) does not serve this purpose, for the reasons set forth above.  Instead, to determine whether an "exercise of discretion" took place for the purposes of granting a public entity immunity under section 855.4, subdivision (a), we should consider whether the challenged decision was one "expressly entrusted to a coordinate branch of government" (*Johnson, supra,* 69 Cal.2d at p. 793), rather than the courts, in an "area[ ] of quasi-legislative policy-making which [is] sufficiently sensitive to justify a blanket rule that courts will not entertain a tort action alleging that careless conduct contributed to the governmental decision."  (*Id.* at p. 794.)  One factor to consider in assessing this is whether the entity made the challenged decision based on a specific legal duty, in which case it is far less likely the entity will be acting pursuant to an "exercise of discretion."  (See *Wong, supra*, 62 Cal.App.5th at p. 149; see Recommendation Relating to Sovereign Immunity (Jan. 1963) 4 Cal. Law Revision Com. Rep. (1963) pp. 830–831 ["when a public official has a legal duty to act in a particular manner, he should be liable for his wrongful or negligent failure to perform the duty; and his employing public entity should be liable if such failure occurs in the scope of his employment"].)

Considering the SAC through this lens, it is apparent from the face of the complaint that the City's decision not to

16

take action against the spread of typhus on the public property adjacent from City Hall East was an exercise of discretion under section 855.4, subdivision (a).  Unlike in *Johnson*, where "no plausible [policy] reason for governmental immunity [arose]" (*Johnson, supra*, 69 Cal.2d at p. 795), all the above-noted policy considerations motivating governmental immunity are applicable on the facts alleged in the SAC.  Nor does anything in the SAC suggest a ministerial performance of a mandatory duty.  (See *Wong, supra*, 62 Cal.App.5th at p. 149 [because the plaintiff "ha[d] not identified any mandatory duties the City violated with respect to its decisions relating to the spread of typhus on City property," she "ha[d] not alleged facts sufficient to demonstrate that the City's actions or omissions do not constitute" the type of discretionary decision described in section 855.4].)  The SAC alleged the City's challenged decision was the result of an exercise of discretion for the purposes of section 855.4.

Our holding today is not, as Greenwood argues, inconsistent with the "well-established rule of construction that when a word or phrase has been given a particular scope or meaning in one part or portion of a law it shall be given the same scope and meaning in other parts or portions of the law." (*Stillwell v. State Bar* (1946) 29 Cal.2d 119, 123.)  Both the "exercise of discretion" required by section 855.4 and that required by section 820.2 are defined by the policy considerations outlined above.  Those policy considerations lead to different requirements depending on whether the conduct at issue is that of an individual public employee or a public entity, whether the alleged liability arises from a decision, rather than an act or omission, and whether the conduct involves a topic inherently sensitive and entrusted to the executive branch.

17

Nor does our interpretation "render section 855.4's limitation that it only applies where there was an actual exercise of discretion, a nullity," as Greenwood argues. Where a public entity or public employee's decision to act or not act in response to a public health emergency is pursuant to a mandatory duty, such a decision would not be discretionary, but rather ministerial. (See *Wong, supra*, 62 Cal.App.5th at p. 149.) Under such circumstances, the policies underlying the need for governmental immunity would not apply, and the decision would not constitute an exercise of discretion. (*Johnson, supra*, 69 Cal.2d at p. 794.) The "exercise of discretion" requirement thus still serves a key function under our interpretation of the phrase.

We next consider Greenwood's second argument based on section 820.2 case law: that a public entity defendant should bear the burden of establishing no exercise of discretion took place in order to justify sustaining a demurrer under section 855.4, and/or that section 855.4 immunity cannot provide a basis for sustaining a demurrer. *Wong* explicitly rejected this approach, citing the differences between section 855.4 and 820.2. (*Wong, supra*, 62 Cal.App.5th at p. 148 [rejecting argument that public entity bore the burden of "prov[ing] at the demurrer stage that [section 855.4] immunity applies"].) At least in the context of a claim against a public entity, rather than a public employee, we agree. The section 820.2 cases taking this approach do so based on the nature of a definition of "exercise of discretion" that we conclude above does not apply here.

For these reasons, under what we hold is the appropriate approach to assessing the sufficiency of allegations against a public entity in the face of a demurrer based on section 855.4, subdivision (a) immunity, the SAC sufficiently alleges an "exercise of discretion" under section 855.4, subdivision (a).

18

### 2. *Due Care*

Greenwood next argues that, even if the SAC alleges an exercise of discretion falling within the scope of section 855.4, subdivision (a), sustaining a demurrer on the basis of section 855.4 immunity is appropriate only if the SAC also alleges facts reflecting the City acted with the due care referenced in section 855.4, subdivision (b). We disagree.

The SAC sufficiently alleges all the requirements for immunity set forth in section 855.4, subdivision (a). Neither the statutory language nor case law interpreting it suggests a defendant must qualify for immunity under *both* section 855.4 subdivision (a) and section 855.4 subdivision (b) in order to be immune. To the contrary, each subdivision provides for immunity from suit for the distinct conduct described therein. Specifically, subdivision (a) provides immunity against claims based on certain decisions; subdivision (b), by contrast, provides immunity from claims based on acts or omissions "*in carrying out* with due care a decision described in subdivision (a)." (§ 855.4, subd. (b), italics added.) As discussed above, the SAC alleges injury from a decision of the type described in subdivision (a), and thus alleges a basis for immunity under subdivision (a). (See *Wong, supra*, 62 Cal.App.5th at p. 149.) It is thus irrelevant whether Greenwood has alleged or could allege facts sufficient to establish a lack of due care, as this is relevant only to immunity under subdivision (b).

### C. The Court Properly Denied Leave To Amend

A trial court abuses its discretion by sustaining a demurrer without leave to amend where "there is a reasonable possibility that the defect can be cured by amendment." (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100.) " 'The plaintiff has the

19

burden of proving that [an] amendment would cure the legal defect, and may [even] meet this burden [for the first time] on appeal.' " (*Sierra Palms Homeowners Assn. v. Metro Gold Line Foothill Extension Construction Authority* (2018) 19 Cal.App.5th 1127, 1132.)

Greenwood has not proffered any facts she could allege, based on which her complaint would no longer describe injury "resulting from the decision to perform or not to perform any act to promote the public health of the community by preventing disease or controlling the communication of disease within the community" that was "the result of the exercise of discretion vested in the public entity or the public employee." (§ 855.4, subd. (a).) Rather, her arguments that no exercise of discretion occurred are grounded in a definition of "exercise of discretion" which, as discussed above, we conclude is inapplicable here.

Further, as noted, because we conclude that the SAC sufficiently alleges immunity under section 855.4, subdivision (a), additional allegations Greenwood represents she could add establishing that the City acted without due care as required by section 855.4, subdivision (b) would not defeat such immunity.

## DISPOSITION

The judgment is affirmed. Respondent City of Los Angeles is awarded costs on appeal.

CERTIFIED FOR PUBLICATION.


ROTHSCHILD, P. J.

I concur:


WEINGART, J.

21

BENDIX, J., Concurring.

To the extent *Wright v. City of Los Angeles* (2001) 93 Cal.App.4th 683 holds that Government Code[1] section 855.4, subdivision (a) immunizes public entities from any disease-related injury occurring on public property, I question whether it was correctly decided.  There is a difference between governmental response to an outbreak of disease, which clearly falls within the ambit of section 855.4, and a public entity's responsibility to keep its facilities safe and sanitary.

I nonetheless concur in the disposition of this case for two reasons.  First, appellant has not challenged this particular holding in *Wright*; rather, her arguments focus on whether the City of Los Angeles (the City)'s alleged failure to maintain disease-free conditions on its property constituted a "decision" that was "the result of the exercise of discretion vested in the public entity."  (§ 855.4, subd. (a).)  Accordingly, I would deem any challenge to *Wright*'s holding forfeited, and leave for another day whether it was correctly decided.

Second, the allegations in the instant case fit comfortably within the scope of section 855.4 even if that section is read more narrowly to apply solely to governmental action or nonaction in response to outbreaks of disease.  Appellant alleges, in essence, that the City insufficiently insulated its property from the effects of a typhus outbreak in the nearby area, thus allowing the disease to spread to appellant and, presumably, others.  Put in terms of section 855.4, appellant alleges the City failed to "promote the public health of the community by preventing

_____

[1] Unspecified statutory citations are to the Government Code.

disease or controlling the communication of disease within the community."  (§ 855.4, subd. (a).)

I therefore agree with the majority that the trial court properly sustained the demurrer.


BENDIX, J.