Filed 3/19/24  In re Andrew A. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re ANDREW A. et al., Persons Coming Under the Juvenile Court Law. | B326745 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 19CCJP04588A-B) |
| Plaintiff and Respondent, | |
| v. | |
| MARIA A., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Pete Navarro, Commissioner.  Affirmed.

Michelle E. Butler, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

———————————————

Maria A. (mother) appeals from the juvenile court's February 1, 2023 order summarily denying her Welfare and Institutions Code[1] section 388 petition, and its April 12, 2023 order denying her request for conjoint counseling and additional visitation with her children.  With regard to the February 1 order, mother contends (1) she made a prima facie showing of changed circumstances and that the requested order was in the children's best interests, and thus the juvenile court erred by denying her request for an evidentiary hearing, and (2) the juvenile court violated her due process rights by considering her children's statements to the court without permitting her to introduce additional evidence or to cross-examine the children.  Mother makes no claim of error with regard to the April 12, 2023 order.[2]  As we discuss, we find no error, and thus we affirm the orders.

---

[1]    All subsequent statutory references are to the Welfare and Institutions Code.

[2]    Because mother makes no claim of error as to the April 12, 2023 order, any such claim is forfeited.  (*Wright v. City of Los Angeles* (2001) 93 Cal.App.4th 683, 689 ["asserted grounds for appeal that . . . merely complain of error without presenting a coherent legal argument are deemed abandoned and unworthy of discussion"]; *Singh v. Lipworth* (2014) 227 Cal.App.4th 813, 817

# FACTUAL AND PROCEDURAL BACKGROUND

Mother has three children: Andrew A. (born in 2009), Gladys A. (born in 2011), and Allison A. (born in 2013). Raul A. (father) is the father of all three children. The present appeal concerns only Andrew and Gladys, and father is not a party to the appeal.

## I. 2019 proceedings.

In June 2019, the Los Angeles County Department of Children and Family Services (DCFS) received a report that father had kicked mother and locked her out of the family's home in the children's presence. The following month, DCFS filed a section 300 petition alleging the children were at substantial risk of physical harm due to domestic violence between the parents. The juvenile court ordered the children detained with the parents.

In September 2019, there were two additional incidents of serious domestic violence between the parents. In one incident, father pulled mother's hair and choked her; in the other, mother lost control of her vehicle during an argument with father and crashed into a parked car. The children were in the car's back seat, and Andrew and Gladys were injured. The children were detained from the parents and placed in foster care.

In October 2019, DCFS filed an amended petition alleging that mother abused marijuana and alcohol, and father abused methamphetamines. On November 7, 2019, the court sustained a single count of the petition pursuant to section 300, subdivision (b), and dismissed the remaining counts. Mother was ordered to

_____

[appellate contentions forfeited if "unsupported by 'adequate factual or legal analysis' "].)

submit to 10 on-demand drug tests and to participate in a domestic violence program and individual counseling. She was granted weekly monitored visits with the children.

## II. 2020 proceedings.

### A. Children's return to mother's custody.

In January 2020, DCFS reported that mother and father were living separately. Mother had been consistently attending a domestic violence support group and individual counseling, was testing negative for all drug use, and was visiting the children regularly. She had been permitted unmonitored eight-hour visits with the children on weekends since December 2019.

On February 6, 2020, the court found mother had made substantial progress with her case plan, and it ordered the children returned to her care under DCFS supervision.

### B. Subsequent petition and detention.

DCFS filed a subsequent petition in September 2020. It alleged that mother engaged in violent altercations with her boyfriend, Anthony M., in the children's presence, and in August 2020, while heavily intoxicated, mother threw a brick through the window of Anthony's home and punched Anthony's sister in the face (counts a-1, b-1). The petition further alleged that mother abused alcohol, rendering her unable to care for the children (count b-2). The children were detained from mother and placed in foster care. Mother was charged with vandalism and public intoxication.

On October 15, 2020, the juvenile court sustained the allegations of the petition and ordered the children removed from mother. Mother was ordered to complete a full drug/alcohol program with aftercare, submit to random drug testing, engage

4

in individual and conjoint counseling, and complete an anger management program.  Mother was granted monitored visits with the children.

## III.  2021 proceedings.

In April 2021, DCFS reported that the children were thriving in foster care and wished to be adopted by their foster parents.  Mother had not had any face-to-face visits with the children and phoned them inconsistently.  She refused to drug test and had not complied with her case plan.  The foster mother had to terminate some video calls between mother and the children because mother appeared to be under the influence of a substance.

On May 4, 2021, the juvenile court terminated the parents' reunification services and set a section 366.26 hearing.

In July 2021, DCFS reported that the foster parents were not interested in adoption, and potential adoptive parents had not been identified.  In August 2021, father filed a section 388 petition requesting that his reunification services be reinstated and the children returned to his care.  The juvenile court reinstated father's reunification services in October 2021.

## IV.  2022 proceedings.

In March 2022, DCFS reported that the children continued to thrive in their foster care placement.  Mother was jailed from October 2021 through March 2022 and had no visits or phone calls with the children during that period.  Upon mother's release, the children refused to see or speak to her.  The children visited regularly with father, as well as with the maternal grandmother and the paternal great-aunt and great-uncle.  Allison wished to live with father if she could not be adopted by

the foster parents, but Andrew and Gladys refused to live with father.

In April 2022, the juvenile court terminated father's reunification services, but ordered Allison to have overnight and weekend visits with father. In August, Allison was placed with father.

During an August 2022 hearing, children's counsel reported that Andrew and Gladys had been declining visits with both parents for several months and wished to have visits suspended. The caregiver told the court that the parents called weekly but the children had refused to speak with them for months, and Andrew hid in the bathroom or the laundry room to avoid phone calls. The caregiver put calls on speaker phone so the children could hear the parents' voices, but the children would walk away. In the past, mother sometimes had been inappropriate during phone calls, telling the children she was incarcerated or making false promises, including that the children would live with her again. Both Andrew and Gladys seemed very nervous when the parents called. The court found that contact with mother was detrimental to the children, and it ordered that mother's contact be suspended.

Andrew and Gladys were matched with a potential adoptive family and had an overnight visit with them in November 2022. The children were placed with the prospective adoptive parents on December 22, 2022.

## V. 2023 proceedings.

Mother filed a section 388 petition on January 26, 2023, seeking reinstatement of her reunification services or, alternatively, visits with Andrew and Gladys. In support, mother stated that she had been in an intensive recovery program since

6

March 2022, had completed domestic violence counseling and drug/alcohol counseling, and was actively involved in parenting and anger management classes. She believed that the requested court order would be in the children's best interests because she was "determined to parent all her children again. [Mother] has maintained consistent contact with . . . Allison and has kept up with her health and education and their relationship is described as positive and patient. Mother has attempted to call her children once a week for nearly an entire year. Such request would help strengthen the bond between the children and parents and allow [mother] to reunify with her children."

At a February 1, 2023 hearing, mother's counsel asked the juvenile court to set the section 388 petition for an evidentiary hearing. The children's counsel opposed the request, urging that mother had not made a prima facie showing of changed circumstances or that the requested order was in the children's best interests. DCFS joined in the children's opposition to mother's request for an evidentiary hearing.

The court stated that it wanted to hear from Andrew and Gladys directly before ruling on mother's request for an evidentiary hearing. The court then questioned the children briefly outside of mother's presence without placing them under oath. Andrew told the court he did not want to visit mother or father because he did not feel safe or comfortable around them. When the court asked why, Andrew said he felt anxious about being alone with his parents because he did not know "if . . . they are going to scream at me or scream at . . . my sisters or they are going to, like, fall asleep or do something." His fear was based on his past experiences with his parents, "on them hitting each other

[and] screaming." Gladys gave a similar answer, saying she was "not comfortable seeing [mother and father] because of the past."

After hearing from the children, the court noted that both seemed highly intelligent and expressed "in no uncertain terms their positions on . . . reunifying." It thereafter denied mother's request to set her section 388 petition for a hearing.

Mother timely appealed from the order denying her section 388 petition.

On April 12, 2023, the juvenile court held a review hearing at which it denied the mother's request for conjoint counseling and visitation. The court continued the section 366.26 hearing to August 2023. Mother appealed from the April 12, 2023 order.

## DISCUSSION

Mother contends the juvenile court (1) abused its discretion by denying her section 388 petition without an evidentiary hearing, and (2) violated her due process rights by accepting evidence from the children without a full hearing. As we discuss, mother's contentions lack merit.

## I. The juvenile court did not abuse its discretion by denying mother's section 388 petition without an evidentiary hearing.

A juvenile court order may be changed, modified or set aside under section 388 "if the petitioner establishes by a preponderance of the evidence that (1) new evidence or changed circumstances exist and (2) the proposed change would promote the best interests of the child. [Citation.] A parent need only make a prima facie showing of these elements to trigger the right to a hearing on a section 388 petition and the petition should be liberally construed in favor of granting a hearing to consider the

8

parent's request.' (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.)

" 'However, if the liberally construed allegations of the petition do not make a prima facie showing of changed circumstances and that the proposed change would promote the best interests of the child, the court need not order a hearing on the petition. [Citations.] The prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition.' (*In re Zachary G.*, *supra*, 77 Cal.App.4th at p. 806.)" (*In re Mary G.* (2007) 151 Cal.App.4th 184, 205; see also *In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1413–1414 [§ 388 petition may be denied without a hearing "if the [petition] fails to reveal any change of circumstance or new evidence which might require a change of order"].) (§ 388, subd. (d) ["If it appears that the best interests of the child . . . may be promoted by the proposed change of order . . . , the court shall order that a hearing be held"].) We review the summary denial of a section 388 petition for an abuse of discretion. (*In re Mary G.*, at p. 205; *In re Anthony W.* (2001) 87 Cal.App.4th 246, 250.)

In support of her section 388 petition, mother made a prima facie showing of changed circumstances—namely, that she had completed approximately 10 months of a one-year intensive recovery program, had begun mentoring others in her program, and had completed domestic violence and drug/alcohol counseling. However, the juvenile court correctly concluded that mother did not make a prima facie showing that reinstating her reunification services and permitting her to visit the children was in their best interests. In support of her petition, mother asserted that a change of order would benefit the children

9

because it "would help strengthen the bond between the children and parents and allow [mother] to reunify with her children." But neither child expressed a desire for visits with mother—to the contrary, both children had been refusing visits and phone calls with mother for more than a year, and both told the social worker they did not wish to have any further contact with either parent. It therefore is highly unlikely that the children would have participated in visits with mother even had the court ordered them. In any event, even were mother correct that further visits would have fostered a bond between her and the children, it is unclear how such a bond would have served the children's interests given mother's failure to reunify with the children and their impending adoption.

Moreover, the statutory time to reunify had long since passed. Our Supreme Court has recently reaffirmed that "to promote the prompt resolution of the child's custody status and her permanent and stable placement, the law sets a presumptive 18-month limit on reunification services." (*Michael G. v. Superior Court* (2023) 14 Cal.5th 609, 627.)[3] This time limit "reflects a considered legislative choice: '[I]n order to prevent children from spending their lives in the uncertainty of foster care, there must be a limitation on the length of time a child has to wait for a parent to become adequate.' (*In re Marilyn H.* [(1993)] 5 Cal.4th [295,] 308.) If the child has already been out of the parent's custody for 18 months and still cannot be safely returned, the statute instructs that the court ordinarily must proceed to schedule a permanency planning hearing under section 366.26, at

---

[3]     Under some limited circumstances, services may be extended for an additional six months. (*Michael G.*, *supra*, 14 Cal.5th at pp. 628–629.)

10

which the court decides whether to terminate parental rights and place the child for adoption or else select another permanent plan.  (§ 366.22, subd. (a)(3); see Welf. & Inst. Code, § 15 [' "Shall" ' is mandatory and "may" is permissive'].)"  (*Michael G.*, at p. 627.)  In the present case, the children had been under court supervision for more than three-and-a-half years, and mother had already received nearly two years of family preservation and/or reunification services.  The children had thrived in foster care and recently had been placed with a family who wished to adopt them.  Under these circumstances, permitting mother additional reunification services would only have delayed permanency for her children, which was not in their best interests.  (See *In re Marilyn H.*, *supra*, 5 Cal.4th at p. 309 [once parent has been given reasonable period of time to reunify with children and has been unsuccessful, "the child's interest in permanency and stability takes priority"]; *In re J.C.* (2014) 226 Cal.App.4th 503, 527 [child's best interests "are not to further delay permanency and stability in favor of rewarding Mother for her hard work and efforts to reunify"].)

> After reunification services have been terminated, "the parents' interest in the care, custody and companionship of the child are no longer paramount."  (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.)  Instead, " 'the focus shifts to the needs of the child for permanency and stability' [citation], and in fact, there is a rebuttable presumption that continued foster care is in the best interest of the child."  (*Ibid.*)  Because mother failed to make a prima facie showing sufficient to rebut the statutory presumption and to demonstrate that the proposed change of order was in the children's best interests, the juvenile court did not abuse its discretion by summarily denying mother's section 388 petition.

## II. The juvenile court did not violate mother's due process rights.

Alternatively, mother contends that the juvenile court violated her due process rights by considering the children's statements at the January 26, 2023 hearing without allowing her to cross-examine the children or to produce additional evidence. We need not decide whether the court erred by considering the children's statements because any such error necessarily was harmless. Assuming for the sake of argument that considering the children's statements was constitutional error, reversal still would not be required if we could conclude "beyond a reasonable doubt that the [result] would have been the same absent [the] error." (*People v. Harrison* (2005) 35 Cal.4th 208, 239.) We so conclude here. As discussed above, had the court not considered the children's statements, it nonetheless would have been required to deny her an evidentiary hearing because she failed to make a prima facie showing that granting her additional visitation or reunification services was in the children's best interests. (§ 388, subd. (d); *In re R.F.* (2023) 94 Cal.App.5th 718, 728.) Because mother was not entitled to an evidentiary hearing, the juvenile court's consideration of the children's statements could not have prejudiced her.

## DISPOSITION

The February 1 and April 12, 2023 orders are affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

EDMON, P. J.

We concur:

EGERTON, J.

ADAMS, J.

13